IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD HARRIS | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | No. 21-3006 |
| | : | |
| T-MOBILE USA, INC. et al., | : | |
| Defendants. | : | |

**EXPLANATION AND ORDER**

Plaintiff Richard Harris brings this action under federal and state law, alleging that Defendant T-Mobile USA d/b/a Metro by T-Mobile ("Metro") failed to prevent unknown individuals from accessing his pre-paid phone service. Metro moves to compel arbitration under the Terms & Conditions that governed Mr. Harris's contract, that require the arbitration of "any and all claims or disputes" relating to Metro's services, policies, and devices.

Before compelling arbitration, a court must establish that "(1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 523 (3d Cir. 2009). The court relies on state-law contract principles for the first step, and federal law for the second step. *Id.* at 524. Federal law prescribes a strong presumption to arbitrate when contracts contain arbitration provisions. *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). This means that ambiguous arbitration provisions are resolved in favor of arbitration. *See Brayman Const. Corp. v. Home Ins. Co.,* 319 F.3d 622, 625 (3d Cir. 2003).

1

Mr. Harris argues that he did not consent to the arbitration agreement and that the agreement is unconscionable. Mr. Harris was sent Metro's terms and conditions when he initially activated his phone with Metro; they were resent in full in 2018 and 2021. He received a text message reminding him of the terms and conditions the dozens of times he paid for his service. The terms and conditions were also available on Metro's website. Mr. Harris argues that he did not sign any of these agreements and was not aware of the arbitration agreement. The terms and conditions are explicit that activating, using, and paying for Metro's service constitutes an agreement to the terms and conditions, which is sufficient to show consent even absent a signature. *See Boomer v. AT & T Corp.*, 309 F.3d 404, 416 (7th Cir. 2002) (finding that a customer's continued use of AT&T services constituted an acceptance of the service's terms and conditions—including an arbitration agreement—even absent a signature); *Shelton v. Comcast Corp.*, No. CV 20-1763, 2021 WL 214303, at *4 (E.D. Pa. Jan. 21, 2021) ("Courts around the country, including this Court, have repeatedly found that a plaintiff's use of Comcast services binds them to the Comcast Subscriber Agreement, even in the absence of a signed agreement or evidence of the plaintiff's actual receipt of the subscriber agreement."). Also, the terms and conditions contained an opt-out provision, enabling customers to opt out of the arbitration agreement within thirty days of initiating service. Mr. Harris initiated service in 2017 and did try to opt out in July of 2021, after he had already filed his complaint in this case. Therefore, Mr. Harris consented to the terms and conditions of his agreement with Metro.

Under Pennsylvania law, to invalidate a contract for unconscionability it must be both procedurally and substantively unconscionable. *Salley v. Option One Mortg. Corp.*, 925 A.2d 115, 199 (Pa. 2007). Procedural unconscionability exists when "there was a lack of meaningful choice in the acceptance of the challenged provision." *Id.* Mr. Harris argues that because cell

phone service is a necessity, and all major providers have arbitration provisions, customers have no choice but to acquiesce to arbitration. This argument fails because of Metro's opt-out provision. *Stephenson v. AT&T Servs., Inc.*, 2021 WL 3603322, at *7 (E.D. Pa. Aug. 13, 2021) ("Because the Arbitration Agreement contained an opt-out provision, it was not presented to Plaintiff on a take-it-or-leave-it basis and, therefore, is not an adhesion contract."); *Cir. City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002) (finding the plaintiff "was not presented with a contract of adhesion because he was given the opportunity to opt-out of the [] arbitration program by mailing in a simple one-page form"). Therefore, the agreement is not unconscionable.

## **ORDER**

**AND NOW,** this **15th day** of **February, 2022**, it is **ORDERED** that Defendant's Motion to Compel Arbitration (ECF No. 15) is **GRANTED**. The case is **STAYED** pending arbitration. Upon completion of arbitration, the parties must advise the Court of the status of the action.

                                      *S/Anita B. Brody*
                                      ANITA B. BRODY, J.

**XC: Arbitration Dept.**

**Copies ecf _____ to:**     **Copies mailed _____ to:**